**IN THE COURT OF APPEALS OF IOWA**

No. 25-1062
Filed December 3, 2025

**IN THE INTEREST OF K.D. and W.D.,**
**Minor Children,**

**A.G., Guardian,**
    Petitioner-Appellee,

**T.D., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Michelle Jungers, Judge.

A father appeals the termination of his parental rights to his two children. **AFFIRMED.**

Joseph G. Martin, Cedar Falls, for appellant father.

Timothy J. Luce of Anfinson & Luce, P.L.C., Waterloo, for appellee guardian.

David R. Zellhoefer, Waterloo, attorney and guardian ad litem for minor children.

Considered without oral argument by Tabor, C.J., and Badding and Sandy, JJ.

**SANDY, Judge.**

The father appeals the termination of his parental rights to his two children, K.D. and W.D., pursuant to Iowa Code section 600A.8(3)(b) (2025).[1] He argues the juvenile court improperly burden shifted and that termination is not in the children's best interests. Because the juvenile court did not shift the burden and termination is in the children's best interests, we affirm.

## BACKGROUND FACTS

K.D. and W.D. were born in 2014 and 2015, respectively. The children began living with the guardian, A.G., and her wife in 2018. The guardian testified that the Iowa Department of Health and Human Services reached out to her in "2017 or 2018" due to some drug-related allegations involving the mother's care of the children. The guardian, who had been in a relationship with the mother prior to the children's birth, initially agreed to the department's request to care for the children temporarily—around two months. The father was not involved with the children during those two months.

After that initial stay, the mother cared for the children briefly but the father did not have any involvement. The guardian took on long-term care of the children in 2018 and was appointed the children's guardian in 2021. The mother and father consented to the guardianship. The father has visited the children a "maximum [of] ten times" since the guardian was granted the guardianship, despite the guardian's address and phone number not changing. She testified that the father has not seen the children "face-to-face" since October 2021 for Halloween. Since

---

[1] The mother's parental rights to the children were terminated under the same grounds. She did not appear at the termination hearing and does not appeal.

then the father has sporadically asked to see the children "last minute" or "wouldn't show up."  The father has never provided any financial support for the children.  He has not sent gifts or cards and never called during his incarceration.

The district court found that the father

has been incarcerated off and on since 2018 for various offenses.  At the time of trial, [he] was incarcerated at the Black Hawk County jail.  [The father]'s probation was recently revoked, and he testified that he is waiting for a bed at the [residential f]acility.  [He] has also had minimal contact with the children since the guardianship action was initiated.  The last time [the father] saw the children was in October of 2021.  He saw them for only a brief period.  He testified that he knew [the guardian]'s current and former address and he has her phone number.  He has had no phone contact with the guardians or the children since approximately 2021.  [The father] testified that he made attempts at contact with [the guardian and her wife] but that he was blocked.  He stated he attempted contact in December of 2024 by sending [the guardian's wife] a Facebook message, but he was blocked.  The Court does not find his testimony to be credible.  He has sent no letters or packages to the children despite knowing their address.  He has provided no evidence of his attempts at contact or evidence showing he was blocked by the [the guardian].  [The father] never provided financial support for the children apart from some toys and other items more than three years ago.  [The father] testified that he always had a job when he was not incarcerated.

The guardian lives in Waterloo and works for the Waterloo School District.  She has summer and other school breaks off from work.  Her wife is an esthetician and massage therapist.  The children are reported to be "thriving" in the couple's care, and "all their medical, dental, educational, social and emotional needs are being met by the [the guardian and her wife]."  The guardians have expressed a desire to adopt the children.

The guardian petitioned to terminate the parents' parental rights in April 2025.  A hearing was held in June, and the juvenile court shortly thereafter entered an order terminating both parents' parental rights to the children.

The father now appeals.

## STANDARD OF REVIEW

We review private termination proceedings de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *Id.* (citation omitted).

## DISCUSSION

The best interests of the children are "the paramount consideration" in deciding private terminations of parental rights. Iowa Code § 600A.1. "However, the interests of the parents . . . shall be given due consideration in" interpreting chapter 600A. *Id.*

The petitioner must prove their case for termination by "clear and convincing proof." *Id.* § 600A.8. When termination is being pursued due to abandonment under section 600A.8(3)(b), the petitioner must prove the parent has abandoned the children by the following:

> If the child[ren are] six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child[ren] unless the parent maintains substantial and continuous or repeated contact with the child[ren] as demonstrated by contribution toward support of the child[ren] of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child[ren] at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child[ren].
> (2) Regular communication with the child[ren] or with the person having the care or custody of the child[ren], when physically and financially unable to visit the child[ren] or when prevented from visiting the child[ren] by the person having lawful custody of the child[ren].
> (3) Openly living with the child[ren] for a period of six months within the one-year period immediately preceding the termination of

parental rights hearing and during that period openly holding himself or herself out to be the parent of the child[ren].

The father first argues that the juvenile court improperly shifted the burden of proof when it found "[h]e has provided no evidence of his attempts at contact or evidence showing he was blocked by the [guardian and her wife]." But the father conflates the juvenile court's credibility determination with an act of burden shifting. The guardian presented evidence that the father had not "visit[ed] the child[ren] at least monthly when able to do so" or engaged in "regular communication" and also testified that the father had access to her phone number and address. Iowa Code § 600A.8(3)(b)(1), (2). The father, in response, claimed that the guardian had blocked his number and his Facebook profile. And notably, the father never asked the guardian during cross-examination if she had blocked his number. So we are left with competing statements—the guardian's assertion that the father could have reached her at her phone number or address and that he had not made any efforts to contact the children through other methods, and the father's assertion that the guardian had blocked communication. It was within the juvenile court's purview to credit the guardian's testimony over the father's testimony. *See B.H.A.*, 938 N.W.2d at 232. It is not burden shifting for the district court to have found the petitioner more credible than the father.

The father next argues that it is not in the children's best interests to terminate his parental rights, simply arguing that he has "never threatened to disrupt placement" and had "no intention of asking for termination of the guardianship." Even if we accepted this argument as true, it does not cut against the juvenile court's conclusion that termination is in the children's best interests.

The father was accused of abandoning the children. Many parents who have abandoned their children may not disrupt the ensuing placements or request termination of their child's guardianship. A defining characteristic of abandonment is the parent's lack of any involvement in the guardianship process. The father's argument that he has not disrupted the guardianship is not an argument for delaying termination indefinitely. *See In re A.H.B.*, 791 N.W.2d 687, 691 (Iowa 2010) ("[I]t is well-settled law that we cannot deprive a child of permanency after the petitioner has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

The father argues no evidence supports termination besides the opinions of the children's counselor therapist, which were not relied upon by the juvenile court. But the father does not challenge, and we agree with, the district court's finding that

> [t]he children are thriving in the care of [the guardian and her wife]. The children participate in a myriad of activities. All their medical, dental, educational, social and emotional needs are being met by the [the guardian and her wife]. [The guardian and her wife] desire to adopt the children. The children see [a therapist] for play therapy and [a psychiatric specialist] for psychiatric care.

Agreeing with the district court that the guardian proved the grounds for termination by clear and convincing evidence and that termination is in the children's best interests, we affirm.

**AFFIRMED.**